# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KHRYSTOPHER GRISSOM,

        Petitioner,    :    Case No. 3:16-cv-508

- vs -    District Judge Thomas M. Rose
    Magistrate Judge Michael R. Merz

JEFF NOBLE, WARDEN,
  London Correctional Institution,

        :

        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Although Petitioner has not paid the filing fee or submitted an application to proceed *in forma pauperis*, the Court finds that, as an incarcerated person, he is indigent and sua sponte grants him leave to proceed *in forma pauperis*.

Petitioner Grissom seeks relief from his convictions in the Montgomery County Common Pleas Court on charges of felonious assault, discharging a firearm on or near a prohibited premises, and one count of having weapons under disability (Petition, ECF No. 1, PageID 1). He was tried and convicted by a jury for an incident that occurred in September 2012.

1

Grissom pleads two grounds for relief:

> **Ground One**: Trial Court Abused its Discretion
>
> **Supporting Facts:** The trial court abused its discretion in violation of the Fourteenth Amendment to the United States Constitution when they denied Appellant's motion for leave to file a new trial based on Newly discovered evidence "Exhibit A Affidavit" that show [sic] misconduct of the Prosecuting Attorney and the witness for the state.
>
> **Ground Two:** Trial Court Abused its Discretion
>
> **Supporting Facts**: Appellant assert [sic] that the Trial Court Abuse [sic] its Discretion when it violated the Petitioner['s] Fourteenth Amendment to the United States Constitution when the record remain incomplete and the Appellant [sic] Court did not correct it to have a fair and correct record to have a meaningful appeal.

(Petition, ECF No. 1, PageID 4.)

The relevant facts are described in the opinion of the Second District Court of Appeals on direct appeal.

> On September 29, 2012, at approximately 11:30 p.m., Daniel Sammons was walking out of a Speedway gas station store on North Dixie Drive in Harrison Township, Ohio, when the door he used to exit the store grazed Grissom's arm. Grissom, who had been standing outside and leaning his shoulder against the door, became angry after the door grazed him, and he began cussing at Sammons. In response, Sammons looked at Grissom and walked away. The confrontation between Sammons and Grissom at Speedway is not in dispute.
>
> Sammons, however, testified that as he walked away, Grissom came toward him and said: "I'm a shoot you up." Additionally, Chris Watkins, a passenger sitting in Sammons's Jeep Liberty parked nearby, testified that he heard Grissom say "shoot you up" to Sammons in an escalated voice. Thereafter, both Watkins and Sammons saw Grissom run and jump inside a maroon Ford Expedition parked nearby. It is undisputed that Grissom was in the driver's seat of the Expedition and that Grissom followed Sammons's Jeep out of Speedway and onto North Dixie Drive.

2

Sammons and Watkins testified that Grissom sped up very close to the rear of Sammons's Jeep and changed lanes so that the Expedition was on the Jeep's driver's side. Both men then heard a gunshot fire into the Jeep as they were driving. Neither Sammons nor Watkins saw a gun, but Watkins testified that he saw a flash and could tell that the gunshot came from the front-seat area of the Expedition. It is undisputed that there was a gunshot fired at the Jeep and that it came from somewhere inside the Expedition.

The gunshot shattered the rear window of Sammons's Jeep and hit the left side of the driver's seat. In response to the gunshot, Sammons testified that he slammed on the brakes and called 9-1-1. Additionally, both Sammons and Watkins testified that they followed the Expedition, which continued to drive away from them after the shot was fired. Sammons and Watkins also testified that they pulled over after spotting a State Trooper on the side of the road, and that they told the officer what had happened.

Londell Johnson, a passenger in the Expedition driven by Grissom, testified that the Expedition belonged to his sister, who is Grissom's girlfriend. Johnson testified that on the night of the shooting, his brother, Lewis, and Grissom's friend, Jaye, were also riding as passengers in the Expedition. According to Johnson, Jaye was seated in the front-passenger seat and he and Lewis were in the back.

Johnson also testified that when they went to Speedway, he, Grissom, and Lewis got out of the Expedition, and that Grissom was the last person to return to the vehicle. While Johnson did not see Grissom's confrontation with Sammons, he testified that Grissom returned to the Expedition and said: "Dude just bumped me." When Johnson inquired who bumped him, Grissom pointed to Sammons's Jeep. Johnson testified that Grissom was the only person in the vehicle that got angry about the confrontation and that he and Lewis were trying to calm him down.

In addition, Johnson testified that he heard a gunshot while they were riding beside the Jeep and that he heard someone say: "Watch out, little bro." He further testified that the gunshot came from inside their vehicle, but that he did not see who fired the gun. After the gunshot, Johnson testified that Grissom drove away. At trial, Johnson's testimony regarding who fired the gun was impeached using a written statement that Johnson gave to police two days after the shooting. Johnson acknowledged that he wrote as part of his statement that, "Jimmy [a.k.a. Grissom] shot the gun." Johnson further acknowledged that he had indicated in his statement that

3

> Grissom told him to say that Jaye had fired the gun. Furthermore, Johnson testified that he and the other passengers had no reason to shoot Sammons.

*State v. Grissom,* 2016-Ohio-961, *; 2016 Ohio App. LEXIS 881 (2nd Dist. Mar. 16, 2016).

On September 8, 2014, after an unsuccessful initial appeal to the Second District and to the Ohio Supreme Court, Grissom filed a motion for leave to file a delayed motion for new trial under Ohio R. Crim. P. 33 which requires such a motion when a defendant seeks to file a motion for new trial more than 120 days after judgment.  The trial court denied the motion and Grissom appealed.  He contended that the trial record was incorrect and the Second District remanded to allow the trial court to consider a motion to correct the record, which it denied.  Grissom then placed the two claims he makes here before the Second District, which denied relief.  *State v. Grissom, supra.*  The Ohio Supreme Court declined jurisdiction over an appeal. *State v. Grissom*, 146 Ohio St. 3d 1431 (2016).  Grissom thus exhausted his available state court remedies and filed his Petition here within the one-year statute of limitations.

# Analysis

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Although Grissom characterizes both of his claims as made under

4

the Due Process Clause of the Fourteenth Amendment, it is not a due process violation for a state court judge to act in abuse of his or her discretion. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Moreover, consideration of the thorough opinion of Judge Froelich for the Second District shows that no abuse of discretion occurred. The substance of Johnson's post-trial affidavit was already dealt with at length at trial so that the jury had an opportunity to consider the merits of Grissom's claims about Johnson's testimony in arriving at its verdict. Where that has occurred, there is no occasion for a new trial for a new jury to hear substantially the same evidence as was heard by the first jury. In any event, the Second District is clearly correct that Grissom knew of the inconsistencies in Johnson's version of the events at the time of trial and was not "unavoidably prevented" from discovering it until after the direct appeal was complete.

With respect to the Second Ground for Relief, the Second District concluded that there was no abuse of discretion in the trial court's failure to change the record or that any possible change was immaterial to Grissom's claim that Johnson's post-trial affidavit was newly discovered.

In sum, this Court cannot reach the question whether the trial judge abused his or her discretion because such an abuse, even if it happened, would not violate the Fourteenth Amendment. If it were authorized to reach that question, it would find no error in the Second District's decision.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this

5

conclusion, the Court should also deny any requested certificate of appealability and certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 20, 2016.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).